IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

DIANA BRENNEMAN,

                Plaintiff,                Case No. 3:10 CV 984

   -vs-

                                          <u>MEMORANDUM OPINION</u>

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

KATZ, J.

This matter is before the Court on the Report and Recommendation ("R & R") of United States Magistrate Judge George J. Limbert (Doc. No. 20), and Plaintiff's objections (Doc. No. 21). In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981), this Court has made a *de novo* determination of the Magistrate's findings to which Plaintiff objects.

**I. Background**

The relevant background for this case is accurate and hereby incorporated as described in the February 8, 2012, brief on the merits filed by the Commissioner:

> STATEMENT OF THE CASE
> On December 26, 2007, Plaintiff applied for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 416(I), 423 (Tr. 97-99). Her disability application was denied initially and on reconsideration (Tr. 32). She appeared with counsel and testified at an administrative hearing on August 20, 2008, before Administrative Law Judge (ALJ) Yvonne K. Stam (Tr. 500-16). Dr. Lorber, a medical expert, also testified at the hearing. After the hearing, interrogatories were answered by a vocational expert, Joseph L. Thompson (Tr. 162-63, 522-23).
> On April 9, 2009, the ALJ denied Plaintiff's disability claim in a written decision (Tr. 10-23). The ALJ found that Plaintiff had not performed substantial gainful activity since the date of her alleged onset of disability and had severe impairments, but none of them, alone or in combination, met or equaled the criteria of the Listings (Tr. 15-16). The ALJ found Plaintiff was limited to light work that involved standing and walking six hours in combination for up to one hour at a time, sitting for six hours up to one hour at a time, and standing at her work station and moving around a few minutes every hour not exceeding five minutes; lifting a maximum up to twenty pounds occasionally and ten pounds frequently; bending, stooping, kneeling, and crouching occasionally; no crawling; no balancing; no

exposure to unprotected heights or dangerous moving machinery; no climbing of ladders, ropes or scaffolds; climbing of ramps and stairs are not limited; and exposure to concentrated vibration should be avoided (Tr. 16). Based on these restrictions, through her date last insured of December 31, 2007, she was unable to perform any past relevant work (Tr. 22). Based on the vocational expert's answers to interrogatories, the ALJ concluded that a significant number of jobs in the national economy accommodated Plaintiff's residual functional capacity and vocational profile, and therefore, she was not disabled (Tr. 22-23). Plaintiff requested review of the ALJ's decision (Tr. 9). On March 10, 2010, the ALJ's decision became final when the Appeals Council denied Plaintiff's request for review (Tr. 4-6). Plaintiff seeks judicial review under 42 U.S.C. § 405(g).

## STATEMENT OF THE FACTS

I. Vocational and Activities Evidence

Plaintiff was 45 years old at the time her insured status expired on December 31, 2007 (Tr. 97). She had a high school education (Tr. 112). She had past work as a playground aide and sorter, among other jobs (Tr. 115).

Joseph Thompson responded to interrogatories as a vocational expert following Plaintiff's administrative hearing (Tr. 161-62, 522-23). The vocational expert considered job possibilities in the regional Liberty Center, Ohio economy, for an individual with Plaintiff's vocational factors of age, education, and work experience, with the following limitations: standing and walking six hours in combination for up to one hour at a time, sitting for six hours not more than one hour at a time, and standing at her work station and moving around a few minutes every hour not exceeding five minutes; lifting a maximum up to twenty pounds occasionally and ten pounds frequently; bending, stooping, kneeling, and crouching occasionally; no crawling; no balancing; no exposure to unprotected heights or dangerous moving machinery; no climbing of ladders, ropes or scaffolds; climbing of ramps and stairs are not limited; and exposure to concentrated vibration should be avoided (Tr. 523). The vocational expert responded that 2,800 jobs in the regional economy as a cashier, production inspector and assembler would accommodate such restrictions (Tr. 161-62). The vocational expert was asked to identify the jobs within the context of the U.S. Department of Labor's Dictionary of Occupational Titles (DOT), (4th ed. 1991) (Tr. 523). The vocational expert identified the job titles, numbers, skill level and exertion level of each job in the context of the DOT (Tr. 161-62).

II. Medical Evidence[1]

A. Dr. Lorber, medical expert

---

[1] The ALJ's decision (Tr. 18-21), as well as Plaintiff's brief contain detailed discussions of the medical evidence (Pl. Br. 4-6), and therefore, our discussion of the evidence will focus on the medical source opinions regarding her functional capacity.

Dr. Lorber reviewed Plaintiff's medical records and testified as a medical expertregarding Plaintiff's physical condition (Tr. 502-12). Dr. Lorber testified that, during therelevant insured period from November 2002 to December 2007, none of Plaintiff'simpairments met or equaled the criteria of any Listings (Tr. 504). The medical expertsummarized Plaintiff's medical history, which included various back impairments, and noted that her imaging studies had not shown any neural impingement, significant stenosis, or focal neurological deficits (Tr. 504). Dr. Lorber concluded that, prior to her surgery in August 2005, Plaintiff retained the capacity for a full range of light work (Tr. 505). After the surgery, Plaintiff retained the capacity for standing and walking six hours in combination for up to one hour at a time, sitting for six hours up to one hour at a time, and standing at her work station and moving around a few minutes every hour not exceeding five minutes; lifting a maximum up to twenty pounds occasionally and ten pounds frequently; bending, stooping, kneeling, and crouching occasionally; no crawling; no balancing; no exposure to unprotected heights or dangerous moving machinery; no climbing of ladders, ropes or scaffolds; climbing of ramps and stairs are not limited; and exposure to concentrated vibration should be avoided (Tr. 505-06). Dr. Lorber noted that Plaintiff's radicular symptoms were not compatible with certain objective medical findings, particularly magnetic resonance imaging (MRI) scans, which showed no nerve root compression or spinal cord compression (Tr. 509-10). The electromyogram (EMG) of the lower extremities also was normal, indicating no focal neurological deficit (Tr. 510). The medical expert testified that the record showed multi-level degenerative disc disease, but did not support sciatica or radiculopathy (Tr. 510).

B. Dr. Lee, treating physician

On February 28, 2008, Dr. Lee examined Plaintiff and shortly thereafter completed a report about her condition (Tr. 424-25). Dr. Lee noted that Plaintiff had back pain, with muscle spasms in the lower back (Tr. 425). Her ranges of motion in the joints and spine were not limited, and her abilities to perform fine and gross manipulation were normal (Tr. 425). She had no need for an ambulatory aid (Tr. 425). Medical records attached to the report showed that in 2007, Plaintiff's arm and leg muscle strength was normal (5/5), straight leg raising tests were negative, her gait was normal, and her reflexes were present (Tr. 426, 431-33).

On July 24, 2008, Dr. Lee assessed Plaintiff's residual functional capacity (Tr. 463-66). Dr. Lee indicated on a form that Plaintiff could occasionally lift up to 20 pounds, and stand less than two hours in an eight-hour workday (Tr. 463). Dr. Lee indicated Plaintiff could walk for less than two hours in an eight-hour workday, and sit for less than six hours in an eight-hour workday (Tr. 464). Plaintiff's ability to push and pull were limited in the lower extremities, and she could occasionally climb ramps and stairs, balance, kneel, crouch, and stoop, but never crawl (Tr. 464). According to Dr. Lee, Plaintiff had constant lower back pain and radicular pain in the left leg (Tr. 465). Dr. Lee indicated that Plaintiff needed to spend part of each workday lying down, resting, or changing position (Tr. 465), and that the times she had to do this were unpredictable (Tr. 466). She also had restrictions on exposure to

>   vibration and temperature extremes (Tr. 466). According to Dr. Lee, she needed four
>   or more days of work absence each month (Tr. 466).

(Doc. No. 18, pp. 1-5.)

## II.  Standard of Review

### A.  Review of an R & R

Any party may object to a magistrate judge's proposed findings, recommendations, or report made pursuant to Fed. R. Civ. P. 72(b).  The district judge to whom the case was assigned may review a report or specified proposed findings or recommendations of a magistrate judge, to which proper objection is made, and may accept, reject, or modify in whole or in part the findings or recommendations of the magistrate judge.  Fed. R. Civ. P. 72.3(b).  This Court has reviewed the findings of the Magistrate Judge *de novo*.  *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981).

### B. Disability standard

A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505; *see id.* § 416.905.

A five-step sequential process, 20 C.F.R. § 404.1520, is employed by the ALJ to determine whether a claimant has a valid disability:

>   First, plaintiff must demonstrate that she is not currently engaged in "substantial
>   gainful activity" at the time she seeks disability benefits. Second, plaintiff must show
>   that she suffers from a "severe impairment" in order to warrant a finding of
>   disability. . . . Third, if plaintiff is not performing substantial gainful activity, has a
>   severe impairment that is expected to last for at least twelve months, and the
>   impairment meets a listed impairment, plaintiff is presumed to be disabled regardless
>   of age, education or work experience.  Fourth, if the plaintiff's impairment does not
>   prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth
>   and final step, even if the plaintiff's impairment does prevent her from doing her past

>relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (citing *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001)). If a claimant is found to be disabled or not disabled at any point in the evaluation process, the determination is made without completing the remaining steps. 20 C.F.R. § 404.1520(a).

"During the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing *Young v. Sec'y of Health & Human Services*, 925 F.2d 146, 148 (6th Cir. 1990)).

In the instant case, at Step Two the ALJ found Plaintiff had degenerative disc disease. However, at Step Three the ALJ determined Plaintiff did not meet a listed impairment. Finally, at Step Five, the ALJ found that other work exists in the national economy that Plaintiff can perform.

**C. Review of Commissioner's decision**

Under 42 U.S.C. § 405(g), the ALJ's findings are conclusive unless this Court finds no substantial evidence exists to support the decision. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)). Deference must be given to the ALJ's decision, "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).

The Sixth Circuit has explained that the substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from

the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (citations and internal quotations omitted).

This Court may reverse the decision and remand for a new hearing if it determines that the ALJ's decision was not supported by substantial evidence. 42 U.S.C. § 405(g). This Court may also reverse the ALJ's decision and award benefits, but only when all essential factual issues have been resolved and the record unquestionably establishes a claimant's entitlement to benefits. *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

**III. Review of Plaintiff's Objections**

    1. <u>Weight Afforded to Dr. Lee's RFC opinion</u>

Plaintiff's first objection charges the Magistrate erred in finding the ALJ did not properly credit "Dr. Lee's RFC opinion in consideration of the controlling weight rule and committed error in rejecting it." (Doc. No. 21 at p. 2.)

It is generally recognized that an ALJ is required to give controlling weight to treating physicians. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). Having carefully reviewed the ALJ's opinion as well as Magistrate Limbert's R & R, this Court finds the ALJ considered Dr. Lee's opinions in conjunction with the medical evidence contained in the record and for the reasons stated in her decision, articulated good reasons for discounting the treating physician's opinion. *Wilson v. Comm'r of Soc. Sec.* 378 F.3d 541, 544 (6th Cir. 2004) citing SSR 96-2p, 1996 WL 274188 (1996).

The ALJ articulated the inconsistencies between Dr. Lee's conclusions and the objective medical evidence in the record. Additionally, the ALJ considered the testimony of the independent medical expert, Dr. Lober, who reviewed all of the medical records in evidence and his testimony was consistent with the objective medical evidence in the record. Magistrate Limbert correctly

found the ALJ rejected portions of the Dr. Lee's conclusions as not being supported by his (Lee's) own notes as well as Dr. Lober's comprehensive review of the record, which included records from Dr. Lee, medical testing and other physician records. In light of this comprehensive review of Plaintiff's medical history, the testimony of Dr. Lober, and the reasons set forth in ALJ's decision, the ALJ was justified in not giving controlling weight to the entirety of Dr. Lee's conclusions. Moreover, as Plaintiff's objection are a reiteration of the issues raised in her merits brief and reply, they do not support a different determination on this issue.

2. Conflict Between VE testimony and the DOT

The second objection by Plaintiff takes issue with the ALJ's alleged failure to comply with SSR 00-4p, specifically that the ALJ failed to inquire of the VE whether there were any conflicts between his testimony and the DOT occupations. As noted by the Magistrate Judge, in response to the ALJ's supplemental interrogatories on this issue, the ALJ inquired whether "there were other jobs that exist in the region, including Liberty Center, Ohio, which could be done with those limitations, providing description including DOT number, SVP legal and exertional level, as well as the number of such jobs in the relevant area." Tr. at p. 523. In his response, the VE stated that he identified "specific occupations by DOT code. . ." Tr. at 162. While the ALJ did not pose a question expressly inquiring upon conflicts, implicit in the VE's response are occupations consistent with the DOT code. Plaintiff had an opportunity to inquire further regarding a perceived conflict, however, she failed to specify a conflict. In her merits brief, the Magistrate Judge correctly pointed out "the DOT does not contain information about whether jobs can be performed with a sit/stand option." (Doc. No. 20 at p. 13.) Moreover, a number of courts, including those in this district have held no conflict exists on the sit/stand option. *Creque v. Astrue*, 2011 WL 4054859 (N.D. Ohio 2011); *Drossman v. Astrue*, 2011 WL 4496561 (N.D. Ohio 2011) (Carr, J.).

7

Absent authority to the contrary, Plaintiff has not established she was prejudiced on this issue. Accordingly, this objection is also not well taken.

3. Due Process Violations

Plaintiff's final objection is grounded upon a denial of due process on the basis of the ALJ's failure to posit a specific hypothetical to the VE. She further raises non-compliance with HALLEX 1-2-7-30 (A) and (B), by the ALJ and his failure to submit the proposed hypothetical as prejudicial error. This Court disagrees.

The HALLEX[2] is the Office of Hearings and Appeals' hearings, appeals and litigation law manual for the Social Security Administration and provides guidance and information as well as defining procedures for the processing and adjudication of claims at hearings. The specific provision in question addresses proffer procedures. At least one circuit court has held the HALLEX to be an internal manual with no force of law. *Roberts v. Commissioner of the Social Sec. Admin.*, 644 F.3d 931 (9th Cir. 2011); Moore *v. Apfel*, 216, F.3d 864, 868-870 (9th Cir. 2000). However, other courts have taken a different approach and held that a violation of HALLEX may result in reversal only if the violation results in prejudice to the claimant. *See Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000); *Kendall v. Astrue*, 2010 WL 1994912 (E.D. Ky. 2010).

In this particular case, Plaintiff is unable to establish any prejudice. The ALJ did address the futility of posing this hypothetical question and that situation was addressed by the Magistrate Judge as follows:

---

[2] "Through HALLEX, the Associate Commissioner of Hearings and Appeals conveys guiding principles, procedural guidance and information to the Office of Hearings and Appeals (OHA) staff. HALLEX includes policy statements resulting from an Appeals Counsel *en banc* meeting under the authority of the Appeals Council Chair. It also defines procedures for carrying out policy and provides guidance for processing and adjudicating claims at the Hearing, Appeals Council and Civil Action levels." HALLEX I-1-0-1, 2005 WL 1863821 (S.S.A.)

> "[T]he ALJ appropriately based her hypothetical on the limitations she found supported by the record as a whole. See *Blacha v. Sec'y of HHS*, 927 F.2d 228, 231 (6th Cir. 1990) ("If the hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints.") Furthermore, the ALJ conceded that Plaintiff would be disabled if she gave Dr. Lee's RFCA controlling weight. Therefore, the ALJ's refusal to pose the hypothetical to the ME did not prejudice Plaintiff."

( Doc. No. 20 at p. 12.) Moreover, as noted by Plaintiff in her merits brief, "[t]hat RFC formed the basis for Brenneman's rejected hypothetical question 2 which was rejected by the ALJ. . . Dr. Lee's RFC described physical limitations that would, arguably, preclude employment." (Doc. No. 13 at p. 5.) Plaintiff's renewed objections on this issue do not warrant a different outcome. As such, Plaintiff's objections based on due process violations are without merit.

### D. Conclusion

For the reasons stated above, and in light of Plaintiff's objections thereto, this Court adopts the January 26, 2012, Report and Recommendation of Magistrate Judge Limbert. The Court affirms the Commissioner's decision and Plaintiff's complaint is dismissed with prejudice.

IT IS SO ORDERED.

    s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE